UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
WHITE PLAINS COURTHOUSE

| | |
|---|---|
| Jethro Inong, individually and on behalf of all others similarly situated, | 7:22-cv-09720 |
| Plaintiff, | |
| - against - | Class Action Complaint |
| Fujifilm North America Corporation, | Jury Trial Demanded |
| Defendant | |

Plaintiff alleges upon information and belief, except for allegations about Plaintiff, which are based on personal knowledge:

1. Fujifilm North America Corporation ("Defendant") manufactures, markets, and sells cameras including the X-Pro3 under the Fujifilm brand ("Product").



2. Defendant markets its cameras as built to last, technologically advanced, and will remain in proper working condition for years to come.

A professional rangefinder camera for photographers on the move who want top-level features, a low-profile, and reliable durability. Whether you are in the field, on the streets or in the studio, X-Pro3 reconnects you with your subject. Its revolutionary

==A professional rangefinder camera for photographers on the move who want top-level features, a low-profile, and reliable durability.==

3. The description of the Product tells consumers it will function reliably and be free of flaws, damage, defects and deficiencies subject to normal and intended use.

## I. PRODUCT MADE WITH DEFECTIVE RIBBON CONNECTOR CABLES

4. Consumers purchase digital cameras for their wide range of functionality, ease of use, and convenience.

5. Defendant highlights the device's "revolutionary hybrid OVF/EVF and hidden LCD touchscreen" as key features.

> A professional rangefinder camera for photographers on the move who want top-level features, a low-profile, and reliable durability. Whether you are in the field, on the streets or in the studio, X-Pro3 reconnects you with your subject. Its revolutionary hybrid OVF/EVF and hidden LCD touchscreen keep you in the moment, while the state-of-the-art imaging sensor and professional-quality video ensure spectacular results. X-Pro3 is a true photographers tool that combines all the feeling of film with all the quality of digital.

A professional rangefinder camera for photographers on the move who want top-level features, a low-profile, and reliable durability. Whether you are in the field, on the streets or in the studio, X-Pro3 reconnects you with your subject. Its revolutionary hybrid OVF/EVF and hidden LCD touchscreen keep you in the moment, while the state-of-the-art imaging sensor and professional-quality video ensure spectacular results. X-Pro3 is a true photographers tool that combines all the feeling of film with all the quality of digital.



6. While in use, the Product's "vastly improved hybrid viewfinder ensures [the photographer is] always fully immersed in [the] moment, without influencing it."

7. Furthermore, "[w]hen combined, [the] industry-leading technology [of the optical viewfinder (OVF) and 3.69M-dot OLED electronic viewfinder (EVF)] provides an outstanding

picture, helping to capture the world exactly as its being seen."

> - Great photography is all about freezing natural moments in time and X-Pro3s vastly improved hybrid viewfinder ensures you are always fully immersed in that moment, without influencing it. The optical viewfinder (OVF) uses a 0.5x magnification and parallax-correcting frame lines to provide an uninterrupted and true-to-life view of whats in front of you. It also allows you to see outside the frame so that you are always ready to catch the approaching action. Additionally, the 3.69M-dot OLED electronic viewfinder (EVF) offers a fast and high-quality representation of exactly how your image will look, with a 1:5000 contrast ratio for excellent clarity. When combined, this industry-leading technology provides an outstanding picture, helping to capture the world exactly as its being seen

Great photography is all about freezing natural moments in time and ==X-Pro3s vastly improved hybrid viewfinder ensures you are always fully immersed in that moment, without influencing it==. The optical viewfinder (OVF) uses a 0.5x magnification and parallax-correcting frame lines to provide an uninterrupted and true-to-life view of whats in front of you. It also allows you to see outside the frame so that you are always ready to catch the approaching action. Additionally, the 3.69M-dot OLED electronic viewfinder (EVF) offers a fast and high-quality representation of exactly how your image will look, with a 1:5000 contrast ratio for excellent clarity. ==When combined, this industry-leading technology provides an outstanding picture, helping to capture the world exactly as its being seen==

8.      Additionally, while "[e]very aspect of [the Product] has been designed for photographers who like to live in the moment, [there is] none more so than its hidden 1.62M-dot tilting LCD touchscreen."

> - Every aspect of X-Pro3 has been designed for photographers who like to live in the moment, but none more so than its hidden 1.62M-dot tilting LCD touchscreen. When closed, all that can be viewed is a mini-display showing essential settings, removing the distraction of a full screen while shooting. With your mind and your eye always on the scene in front of you rather than the scene youve just shot, you can find a better connection not just with your subject, but also with your art. If seeking the perfect moment is instinctive to you, look no further than X-Pro3 as your tool.

==Every aspect of X-Pro3 has been designed for photographers who like to live in the moment, but none more so than its hidden 1.62M-dot tilting LCD touchscreen==. When closed, all that can be viewed is a mini-display showing essential settings, removing the distraction of a full screen while shooting. With your mind and your eye always on the scene in front of you rather than the scene youve just shot, you can find a better connection not just with your subject, but also with your art. If seeking the perfect moment is instinctive to you, look no further than X-Pro3 as your tool.

9. Beyond these key features, Defendant emphasizes the "outstanding durability" of the Product, by highlighting that its "timeless body design features a top and base plate constructed from titanium, which, despite being little more than half the density of stainless steel, is seven-times more durable."

- X-Pro3s timeless body design features a top and base plate constructed from titanium, which, despite being little more than half the density of stainless steel, is seven-times more durable. In addition to classic black, the weather-resistant X-Pro3 is also available in silver and charcoal colors, which utilize cold plasma technology for a scratch-resistant finish. This outstanding durability combines with a newly developed shutter release unit that ensures dependable precision and smoother, more responsive functionality to create a camera that can be relied upon to perform in any situation

==X-Pro3s timeless body design features a top and base plate constructed from titanium, which, despite being little more than half the density of stainless steel, is seven-times more durable==. In addition to classic black, the weather-resistant X-Pro3 is also available in silver and charcoal colors, which utilize cold plasma technology for a scratch-resistant finish. ==This outstanding durability combines with a newly developed shutter release unit that ensures dependable precision and smoother, more responsive functionality to create a camera that can be relied upon to perform in any situation==

10. This durability plus the Product's tech features "create a camera that can be relied upon to perform in any situation."

11. However, despite the marketing of the Product as durable, capable of functioning reliably and remaining in proper working condition for years to come, it did not function reliably or remain free of flaws, damage, or deficiencies.

12. The ribbon connector cables of the Product were defective, in that the mechanisms loosened or disconnected on their own after normal and intended use.

13. This defect in turn caused the viewfinder(s) and/or the LCD touchscreen to glitch or stop working altogether, affecting the function and capabilities of the device.



14. Most consumers have encountered this defect and the related issues without warning.

15. In fact, many experienced the defect unexpectedly, once loosening or disconnection occurred.

16. However, the defect was present and continuously evolving much sooner than noticed or experienced.

17. This is because the ribbon connector cable mechanism is too weak to withstand normal use, frequent opening-and-closing, and switching between view modes.

18. Even if there is proper maintenance and only normal and intended use of the Product, the defect and related issues occur.



5

I have an X-Pro3. A few weeks ago the sub monitor died. Then the LCD died a couple days thereafter. The camera is in excellent condition… never dropped it or banged it. Not under warranty any longer. What are my options?



Ok this is what i noticed on Xpro3. My sub monitor dies. Then the main LCD died the other day. I looked carefully and saw that the data/video (ribbon) connector tape was torn. I take good care of my Xpro 3 and never have dropped it but it seems the poor design of the monitor suffers from wear n tear. I will have-to send mine off for repair. I truly hope the next Xpro4 will adjust the design.

19.     Consumers expect a camera represented – directly or indirectly – as durable, capable of functioning reliably and remaining in proper working condition for years to come, especially when it is marketed to have "outstanding durability" and "revolutionary hybrid OVF/EVF and hidden LCD touchscreen," to function reliably and remain free of flaws, damage, and deficiencies.

20.     Many individuals have complained online about the Product, the ribbon connector

cable mechanism defect, and Defendant's handling of the situation, on sites like *fujix-forum.com*, *fredmiranda.com, facebook.com* groups, and other forum communities.







21. Cameras made with ribbon connector cables that can withstand normal and intended use, are capable of functioning reliably and remaining in proper working condition for years to come, are available to consumers and are not technologically or commercially unfeasible.

8

## II.     CONCLUSION

22.     Defendant makes other representations and omissions with respect to the Product which are false and misleading.

23.     Had Plaintiff and proposed class members known the truth, they would not have bought the Product or would have paid less for it.

24.     As a result of the false and misleading representations, the Product is sold at a premium price, approximately no less than $1,799.00, excluding tax and sales, higher than similar products, represented in a non-misleading way, and higher than it would be sold for absent the misleading representations and omissions.

Jurisdiction and Venue

25.     Jurisdiction is proper pursuant to Class Action Fairness Act of 2005 ("CAFA"). 28 U.S.C. § 1332(d)(2).

26.     The aggregate amount in controversy exceeds $5 million, including any statutory damages, exclusive of interest and costs.

27.     Plaintiff is a citizen of California.

28.     Defendant is a New York corporation with a principal place of business in New York.

29.     The class of persons Plaintiff seeks to represent includes persons who are citizens of different states from which Defendant is a citizen.

30.     The members of the class Plaintiff seeks to represent are more than 100, because the Product has been sold for several years, with the representations described here, in hundreds of locations across the States covered by Plaintiff's proposed classes.

31.     The Product is available to consumers from camera stores, consumer electronics stores, and online.

32.     Venue is in this District with assignment to the White Plains Courthouse because a

substantial part of the events or omissions giving rise to these claims occurred in Westchester County, including Defendant's decisions with respect to the manufacturing, marketing and labeling of the Product.

### Parties

33. Plaintiff Jethro Inong is a citizen of Los Angeles, Los Angeles County, California.

34. Defendant Fujifilm North America Corporation is a New York corporation with a principal place of business in Valhalla, Westchester County, New York.

35. Defendant was established in Japan in 1934, as Fuji Photo Film. Co. Ltd., a producer of photographic films.

36. Eventually, the company expanded into the production of "products and services of Healthcare (Medical Systems, Consumer Healthcare, Supplement, Pharmaceuticals, Bio CDMO, and Regenerative Medicine), Materials (Advanced Materials, Graphic Systems & Inkjets, and Recording Media), and Imaging (Photo Imaging and Optical Device and Electronic Imaging)."

37. Products under the Fujifilm brand have an industry-wide reputation for innovation, quality, reliability and value.

38. Plaintiff purchased the Product within the statutes of limitations for each cause of action alleged, from Samy's Camera, 431 S Fairfax Ave, Los Angeles CA 90036, in winter 2019.

39. Plaintiff bought the Product because he believed and expected that the Product would be durable, function reliably and be free of flaws, defects, damage, and deficiencies for many years, subject to normal and intended use, because that is what the representations and omissions said and implied.

40. Plaintiff seeks to purchase cameras which are durable, function reliably and remain free of flaws, damage, and deficiencies for many years, subject to normal and intended use.

41. Plaintiff relied on the words, descriptions, statements, omissions, claims, and instructions, made by Defendant or at its directions, in digital, print and/or social media, which accompanied the Product and separately, through in-store, digital, audio, and print marketing.

42. Plaintiff bought the Product at or exceeding the above-referenced price.

43. Plaintiff paid more for the Product than he would have had he known the representations and omissions were false and misleading, or would not have purchased it.

44. The value of the Product that Plaintiff purchased was materially less than its value as represented by Defendant.

45. Plaintiff chose between Defendant's Product and products represented similarly, but which did not misrepresent their attributes, features, and/or components.

### Class Allegations

46. Plaintiff seeks certification under Fed. R. Civ. P. 23 of the following classes:

> **California Class:** All persons in the State of California who purchased the Product during the statutes of limitations for each cause of action alleged; and
>
> **Consumer Fraud Multi-State Class**: All persons in the States of Virginia, North Carolina, Georgia, South Carolina, North Dakota, Nebraska, Idaho, Wyoming, Montana and Alaska who purchased the Product during the statutes of limitations for each cause of action alleged.

47. Common questions of issues, law, and fact predominate and include whether Defendant's representations were and are misleading and if Plaintiff and class members are entitled to damages.

48. Plaintiff's claims and basis for relief are typical to other members because all were subjected to the same unfair, misleading, and deceptive representations, omissions, and actions.

49. Plaintiff is an adequate representative because his interests do not conflict with other

members.

50. No individual inquiry is necessary since the focus is only on Defendant's practices and the class is definable and ascertainable.

51. Individual actions would risk inconsistent results, be repetitive and are impractical to justify, as the claims are modest relative to the scope of the harm.

52. Plaintiff's counsel is competent and experienced in complex class action litigation and intends to protect class members' interests adequately and fairly.

New York General Business Law ("GBL") §§ 349 and 350

53. Plaintiff incorporates by reference all preceding paragraphs.

54. Plaintiff believed the Product was durable, would function reliably and be free of flaws, damage, and deficiencies for many years, subject to normal and intended use.

55. Defendant's false, misleading, and deceptive representations and omissions are material in that they are likely to influence consumer purchasing decisions.

56. Plaintiff would not have purchased the Product or paid as much if the true facts had been known, suffering damages.

Violation of State Consumer Fraud Acts
(Consumer Fraud Multi-State Class)

57. The Consumer Fraud Acts of the States in the Consumer Fraud Multi-State Class are similar to the consumer protection statute invoked by Plaintiff and prohibit the use of unfair or deceptive business practices in the conduct of commerce.

58. The members of the Consumer Fraud Multi-State Class reserve their rights to assert their consumer protection claims under the Consumer Fraud Acts of the States they represent and/or the consumer protection statute invoked by Plaintiff.

59. Defendant intended that members of the Consumer Fraud Multi-State Class would

rely upon its deceptive conduct, which they did, suffering damages.

Breaches of Express Warranty,
Implied Warranty of Merchantability/Fitness for a Particular Purpose and
Magnuson Moss Warranty Act, 15 U.S.C. §§ 2301, *et seq.*

60. The Product was manufactured, identified, marketed, distributed, and sold by Defendant and expressly and impliedly warranted to Plaintiff that it was durable, would function reliably and be free of flaws, damage, and deficiencies for many years, subject to normal and intended use.

61. Defendant directly marketed the Product to Plaintiff through its advertisements and marketing, through various forms of media, product descriptions distributed to resellers, and targeted digital advertising.

62. Defendant knew the product attributes that potential customers like Plaintiff were seeking and developed its marketing to directly meet those needs and desires.

63. Defendant's representations about the Product were conveyed in writing and promised it would be defect-free, and Plaintiff understood this meant that it was durable, would function reliably and be free of flaws, damage, and deficiencies for many years, subject to normal and intended use.

64. Defendant's representations affirmed and promised that the Product was durable, would function reliably and be free of flaws, damage, and deficiencies for many years, subject to normal and intended use.

65. Defendant described the Product so Plaintiff believed it was durable, would function reliably and be free of flaws, damage, and deficiencies for many years, subject to normal and intended use, which became part of the basis of the bargain that it would conform to its affirmations and promises.

66. Defendant had a duty to disclose and/or provide non-deceptive descriptions and marketing of the Product.

67. This duty is based on Defendant's outsized role in the market for this type of Product, a trusted company, known for its high-quality electronics.

68. Plaintiff recently became aware of Defendant's breach of the Product's warranties.

69. Plaintiff provided or provides notice to Defendant, its agents, representatives, retailers, and their employees that it breached the Product's warranties.

70. Defendant received notice and should have been aware of these issues due to complaints by third-parties, including regulators, competitors, and consumers, to its main offices, and by consumers through online forums.

71. The Product did not conform to its promises or affirmations of fact due to Defendant's actions.

72. The Product was not merchantable because it was not fit to pass in the trade as advertised, not fit for the ordinary purpose for which it was intended and did not conform to the promises or affirmations of fact made in marketing or advertising, because it was marketed as if it was durable, would function reliably and be free of flaws, damage, and deficiencies for many years, subject to normal and intended use.

73. The Product was not merchantable because Defendant had reason to know the particular purpose for which the Product was bought by Plaintiff, because he expected it was durable, would function reliably and be free of flaws, damage, and deficiencies for many years, subject to normal and intended use, and he relied on Defendant's skill and judgment to select or furnish such a suitable product.

<u>Unjust Enrichment</u>

74. Defendant obtained benefits and monies because the Product was not as represented

and expected, to the detriment and impoverishment of Plaintiff and class members, who seek restitution and disgorgement of inequitably obtained profits.

Jury Demand and Prayer for Relief

Plaintiff demands a jury trial on all issues.

**WHEREFORE**, Plaintiff prays for judgment:

1. Declaring this a proper class action, certifying Plaintiff as representative and the undersigned as counsel for the class;

2. Awarding monetary, statutory and/or punitive damages and interest;

3. Awarding costs and expenses, including reasonable fees for Plaintiff's attorneys and experts; and

4. Other and further relief as the Court deems just and proper.

Dated:   November 15, 2022

Respectfully submitted,

/s/  Spencer Sheehan
Sheehan & Associates, P.C.
60 Cuttermill Rd Ste 412
Great Neck NY 11021
(516) 268-7080
spencer@spencersheehan.com