UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

JETHRO INONG, individually and on behalf of all others similarly situated,

                    Plaintiff,

-against-

FUJIFILM NORTH AMERICA CORPORATION,

                    Defendant.

**OPINION AND ORDER**

22-CV-09720 (PMH)

---

PHILIP M. HALPERN, United States District Judge:

Jethro Inong ("Plaintiff"), brings this putative class action against Fujifilm North America Corporation ("Defendant") alleging that Defendant's product—the X-Pro3 camera (the "Product")—did not function reliably or remain free of flaws, damage, or deficiencies, despite Defendant's purported marketing of the Product as durable, capable of functioning reliably, and remaining in proper working condition for years to come. (Doc. 12, "FAC").

Presently pending before the Court is Defendant's motion to dismiss the Amended Complaint under Federal Rule of Civil Procedure 12(b)(6). (Doc. 16; Doc. 17, "Def. Br."; Doc. 18). Plaintiff filed a memorandum of law in opposition (Doc. 19, "Pl. Br."), and the motion was fully briefed with the filing of Defendant's reply memorandum of law. (Doc. 20, "Reply"). Defendant thereafter, on January 9, 2024 and January 17, 2024, provided the Court with supplemental authority in further support of its motion to dismiss. (Doc. 21; Doc. 22).

For the reasons set forth below, Defendant's motion to dismiss is GRANTED.

**BACKGROUND**

Plaintiff, a resident of California, alleges that approximately four years ago, "in winter 2019," he purchased the Product from a third-party retailer in Los Angeles, California. (FAC ¶ 32, 37). At some unspecified time, the ribbon connector cable in the Product failed. (*Id*. ¶ 12). Plaintiff alleges that "many individuals" have complained about the Product, issues with the ribbon connection, and Defendant's "handling of the situation" on certain online forum communities. (*Id*. ¶ 19). Plaintiff alleges that Defendant marketed its product as "[a] professional rangefinder camera for photographers on the move who want top-level features, a low-profile, and reliable durability," which "tells [] purchasers it will function reliably and be free of flaws, damage, defects, and deficiencies subject to normal and intended use." (*Id*. ¶¶ 1-3). Plaintiff further alleges that Defendant represented that "[t]he combination of durability and advanced features 'create a camera that can be relied upon to perform in any situation.'" (*Id*. ¶ 9). Thus, Plaintiff expected the Product to be "capable of functioning reliably and remaining in proper working condition for years to come." (*Id*. ¶ 18). Had Plaintiff known that "the camera fails to operate reliably, consistent with normal and expected use, due in part to its defective ribbon connector cables," he "would not have bought the Product or would have paid less for it." (*Id*. ¶¶ 10, 22).

Plaintiff, through this action, seeks to represent a class of California consumers on claims arising under California's Unfair Competition Law ("UCL"), Cal. Bus. & Prof. Code §§ 17200, *et seq.*; California's False Advertising Law ("FAL"), Cal. Bus. & Prof. Code §§ 17500, *et seq.*; and common law breach of express warranty. (*Id*. ¶¶ 46, 53-88).

## STANDARD OF REVIEW

On a Rule 12(b)(6) motion, a court may dismiss a complaint for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).[1] A claim is plausible on its face "when the ple[d] factual content allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. (citing *Twombly*, 550 U.S. at 556). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant acted unlawfully." *Id*. The factual allegations pled "must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555.

"When there are well-ple[d] factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Iqbal*, 556 U.S. at 679. Thus, the court must "take all well-ple[d] factual allegations as true, and all reasonable inferences are drawn and viewed in a light most favorable to the plaintiff[]." *Leeds v. Meltz*, 85 F.3d 51, 53 (2d Cir. 1996). The presumption of truth, however, "'is inapplicable to legal conclusions,' and '[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice.'" *Harris v. Mills*, 572 F.3d 66, 72 (2d Cir. 2009) (quoting *Iqbal*, 556 U.S. at 678 (alteration in original)). Therefore, a plaintiff must provide "more than labels and conclusions" to show entitlement to relief. *Twombly*, 550 U.S. at 555.

---

[1] Unless otherwise indicated, case quotations omit all internal citations, quotation marks, footnotes, and alterations.

**ANALYSIS**

I. <u>First and Second Claims for Relief</u>

Plaintiff's First and Second Claims for Relief allege California consumer fraud claims under the UCL and FAL. Defendant contends that these claims fail to plausibly state a claim upon which relief can be granted. (Def. Br. at 11-16). The Court agrees.

The UCL and FAL "prohibit unlawful, unfair, or fraudulent business practices." *Ebner v. Fresh, Inc.*, 838 F.3d 958, 963 (9th Cir. 2016). The UCL prohibits "any unlawful, unfair, or fraudulent business act or practice." Cal. Bus. & Prof. Code § 17200. The FAL prohibits false or misleading advertising, which "is untrue or misleading, and which is known, or . . . should be known, to be untrue or misleading." Cal. Bus. & Prof. Code § 17500. "[C]laims under the UCL[ ] [and] FAL . . . are governed by the 'reasonable consumer' standard." *McGinity v. Procter & Gamble Co.*, 69 F.4th 1093, 1097 (9th Cir. 2023) (quoting *Williams v. Gerber Prods. Co.*, 552 F.3d 934, 938 (9th Cir. 2008)). Plaintiff, to meet that standard, must "show that members of the public are likely to be deceived." *Id*. "The California Supreme Court has recognized that these statutes prohibit explicitly false advertising and advertising that is either actually misleading, or which has a capacity, likelihood, or tendency to deceive or confuse the public." *Id*.

"The reasonable consumer standard requires more than a mere possibility that the label might conceivably be misunderstood by some few consumers viewing it in an unreasonable manner." *Id*. "[T]he reasonable consumer standard requires a probability that a significant portion of the general consuming public or of targeted consumers, acting reasonably in the circumstances, could be misled." *Id*. "The touchstone under the 'reasonable consumer' test is whether the product labeling and ads promoting the products have a meaningful capacity to deceive consumers." *Id*. Where, as here, UCL and FAL claims are premised on a portion of an advertisement, that portion

"must be unambiguously deceptive for a defendant to be precluded from insisting" that it be read in context with the rest of the material. *McGinity*, 69 F.4th at 1098.

A plaintiff pleading consumer fraud claims predicated upon an alleged omission must establish that the omission was "contrary to a representation actually made by the defendant, or an omission of a fact the defendant was obligated to disclose." *Hodsdon v. Mars, Inc.*, 891 F.3d 857, 861 (9th Cir. 2018).

Furthermore, claims under the UCL and FAL are subject to the heightened pleading standard under Federal Rule of Civil Procedure 9(b) where they are grounded in fraud. *Davidson v. Kimberly-Clark Corp.*, 889 F.3d 956, 964 (9th Cir. 2018). To satisfy this requirement, "a pleading must identify the who, what, when, where, and how of the misconduct charged, as well as what is false or misleading about the purportedly fraudulent statement." *Id.*; *Browning v. Am. Honda Motor Co.*, 549 F. Supp. 3d 996, 1003 (N.D. Cal. 2021). Plaintiff alleges that his California consumer fraud claims are based on "materially false representations and omissions" that Defendant made about the Product. (FAC ¶ 57). Because these claims are premised on allegations of fraud, they are subject to the heightened pleading standard under Rule 9(b). The allegations in support of these claims fail to meet this heightened standard.

With respect to alleged representations, Plaintiff focuses on advertising language for the Product which noted that the Product's base is made of "durable" titanium, and that "[t]he combination of durability and advanced features create a camera that can be relied upon to perform in any situation." (FAC ¶¶ 8, 9 (internal quotation marks omitted)). Plaintiff alleges that such language reasonably caused him to believe that none of the Product's internal components would ever need repairs. (*Id.* ¶¶ 58-59, 67-68). Plaintiff alleges that Defendant, in the Product listing on its website, made representations that the Product was durable, would function reliably and be free

5

of flaws, damage, and deficiencies for many years, subject to normal and intended use." (*Id*. ¶¶ 18, 38, 58, 67; *id*. n.1-10). However, when the listing is read in full and in context, Plaintiff's cherry-picking of certain words does not lead a reasonable consumer to that conclusion. There is nothing "unambiguously deceptive" about Defendant's Product listing. *McGinity*, 69 F.4th at 1098. Plaintiff simply has not alleged that Defendant actually misstated any material facts about the Product and does not plead whether he even saw this language before making his purchase.

The deficiencies in this pleading are akin to those examined in *Bondick v. Ricoh Imaging Americas Corp.*, which likewise involved a digital camera.[2] 21-C-06132, 2022 WL 2116664, at *1 (N.D. Ill. June 13, 2022). "After four years, the camera began to evidence issues with its aperture, which Bondick claim[ed] [wa]s due to the design choices made by Ricoh." *Id*. Bondick "d[id] not present any specific communication from Ricoh pre-purchase beyond its general distribution and holding out of the product" and did not allege "any communication from Ricoh regarding the lifespan of the camera." *Id*. at *3. That Court held that the failure to "identify any specific misrepresentation by Ricoh regarding the K-50 camera" and to "allege any false statement relied upon in his purchase of the K-50 camera" were fatal to his claim. *Id*.

Plaintiff's claims herein do not plausibly allege that any reasonable person would have interpreted the statements alleged in the manner urged by Plaintiff. Plaintiff alleges that the subject representations are that Product's construction from titanium, when combined with certain advanced features, "create a camera that can be relied upon to perform in any situation," and is made "for photographers on the move who want top-level features, a low-profile, and reliable durability." (FAC ¶¶ 2, 8, 9). But that language simply does not tell "consumers [the Product] would function reliably and be free of flaws, damage, defects, and deficiencies subject to normal

---

[2] The claims in *Bondick* were brought under the Illinois Consumer Fraud and Deceptive Business Practices Act. 2022 WL 2116664, at *1.

6

and intended use, although even when the camera is in excellent condition and never dropped or banged, *the sub monitor and LCD become non-functional because of the defective ribbon cables*." (Pl. Br. at 8 (cleaned up, emphasis added)). The Amended Complaint does not draw any connection between ribbon connector cables and the Product's "body design [that] features a top and base plate constructed from titanium" thus making it more durable than stainless steel. (FAC ¶ 8). A representation that the Product's top and base plate is made of durable titanium simply does not lead a reasonable consumer to believe that the Product's ribbon connector cable would never require repair.

While it is far from clear what omission if any Plaintiff herein alleges, Plaintiff simply has not alleged that Defendant concealed a known defect or other fact that Defendant was obligated to disclose. *Hodsdon*, 891 F.3d at 861. To the extent the omission to which Plaintiff refers in the Amended Complaint is Defendant's failure to disclose the possibility that the Product might someday require repair or suffer a defect or damage, such allegation fails as it is entirely unsupported by allegations that Defendant concealed a known defect.

Thus, Plaintiff has failed to plead any facts to plausibly allege that Defendant made fraudulent misrepresentations or omissions to sufficiently support a claim under the UCL or FAL. Accordingly, Plaintiff's First and Second Claims for Relief are dismissed.

II.     Third Claim for Relief: Breach of Express Warranty

Defendant argues that Plaintiff's breach of express warranty claim fails: (1) for the same reasons his consumer fraud claims fail; (2) because Defendant's Warranty disclaims all warranties other than an obligation to repair and/or replace a defective camera within the first year after its

purchase;[3] and (3) because Plaintiff failed to provide pre-suit notice of a breach of warranty. (Def. Br. at 17-20).

Under California law,[4] to state a claim for breach of express warranty, "a plaintiff must prove that (1) the seller's statements constitute an affirmation of fact or promise or a description of the goods; (2) the statement was part of the basis of the bargain; and (3) the warranty was breached." *Schneider v. Colgate-Palmolive Co.*, No. 22-CV-01294, 2023 WL 4009099, at *6 (N.D.N.Y. June 15, 2023). "In order to plead a cause of action for breach of express warranty, one must allege the exact terms of the warranty, plaintiff's reasonable reliance thereon, and a breach of that warranty which proximately causes plaintiff injury." *Williams v. Beechnut Nutrition Corp.*, 185 Cal. App. 3d 135, 142 (1986). "A description of the goods at issue can create an express warranty so long as it was part of the basis of the bargain between the parties." *Viggiano v. Hansen Nat. Corp.*, 944 F. Supp. 2d 877, 893 (C.D. Cal. 2013) (citing Cal. Com. Code § 2313(1)(b)).

---

[3] On a Rule 12(b)(6) motion, "the Court is entitled to consider facts alleged in the complaint and documents attached to it or incorporated in it by reference, [as well as] documents 'integral' to the complaint and relied upon in it, and facts of which judicial notice may properly be taken . . . ." *Heckman v. Town of Hempstead*, 568 F. App'x 41, 43 (2d Cir. 2014); *Manley v. Utzinger*, No. 10-CV-02210, 2011 WL 2947008, at *1 n.1 (S.D.N.Y. July 21, 2011) (explaining that a court may consider "statements or documents incorporated into the complaint by reference, and documents possessed by or known to the plaintiff and upon which the plaintiff relied in bringing the suit"). Defendant offered the Declaration of Jeffrey S. Jacobson and the Limited Product Warranty annexed as an exhibit thereto. (Doc. 18). The Court does not consider either of these documents because they are not incorporated by reference into the Amended Complaint, nor are they documents on which the Amended Complaint relies. Plaintiff, in his opposition brief, confirms that his express warranty claim is "not based on [Defendant's] Warranty which disclaims all warranties other than an obligation to repair and/or replace within the first year after its purchase . . ." (Pl. Br. at 13). Defendant has not established any basis for the Court to consider this extraneous document on the instant Rule 12(b)(6) motion.

[4] Defendant urges the Court to apply New York law to this claim for relief on the ground that the Product's Limited Warranty supplies such a choice of law provision. (Def. Br. at 16; Reply at 9). Because the Court declines to consider the Limited Warranty on this motion, and because the parties' briefs both included California substantive law on this issue, the Court applies California law for this analysis. It is important to note, however, that the result would be identical had the Court applied New York law.

"Reasonable notice" to the product manufacturer before filing suit is a pre-requisite to a breach of warranty claim under California law. Cal. Com. Code § 2607(3)(A); *Lemus v. Rite Aid Corp.*, 613 F. Supp. 3d 1269, 1280 (C.D. Cal. 2022). "[R]easonable notice requires pre-suit notice and is intended to allow the Defendant an opportunity to cure the defect before litigation begins." *Lemus*, 613 F. Supp. 3d at 1280 (citing *Alvarez v. Chevron Corp.*, 656 F.3d 925, 932 (9th Cir. 2011)); *see also Minkler v. Apple, Inc.*, 65 F. Supp. 3d 810, 814, 817-18 (N.D. Cal. 2014); *Stearns v. Select Comfort Retail Corp.*, No. 08-02746, 2008 WL 4542967, at *1 (N.D. Cal. Oct. 1, 2008).

Plaintiff alleges that he "provided or provides notice to Defendant, its agents, representatives, retailers, and their employees that it breached the Product's express warranty." (FAC ¶ 83). Although Plaintiff does not plead in the Amended Complaint when he provided notice, he concedes in his opposition brief that he "notified Defendant of the breach by filing this action on November 11, 2022." (Pl. Br. at 14). Thus, his claim is subject to dismissal for failure to provide timely pre-suit notice. *Alvarez*, 656 F.3d at 932 ("We therefore must conclude that Plaintiffs failed to plead that they provided reasonable notice under § 2607(3)(A) because their notice letter was sent to Defendants simultaneously with service of the complaint."); *Lemus*, 613 F. Supp. 3d at 1280 ("Plaintiff's attempt to provide notice after commencing litigation does not satisfy the statutory notice requirement."). Plaintiff does not cite to any authority respecting express warranty claims under California law which provides otherwise.[5]

---

[5] Plaintiff, in support of his argument that pre-suit notice is satisfied by the filing of this lawsuit, cites *Gavilanes v. Gerber Prods. Co.*, for the proposition that under New York law, "a plaintiff's pleadings may constitute reasonable notice." No. 20-CV-05558, 2021 WL 5052896, at *7 (E.D.N.Y. Nov. 1, 2021). However, "*Gavilanes*, the case on which Plaintiff relies, 'has been repeatedly criticized by courts in this district as misapplying New York law and reflects a disfavored minority view.'" *Adeghe v. Procter & Gamble Co.*, No. 22-CV-10025, 2024 WL 22061, at *6 (S.D.N.Y. Jan. 2, 2024) (quoting *Fuller v. Stop & Shop Supermarket Co. LLC*, No. 22-CV-09824, 2023 WL 8005319, at *8 (S.D.N.Y. Nov. 17, 2023)). "[T]he *Gavilanes* exception to the notice requirement is limited to products for human consumption that cause physical injury . . . and simply does not apply where, as here, a plaintiff alleges only economic injury . . . in connection with claims involving a product not intended for human consumption. . . ." *Id.*

This claim fails for the additional reason that it is premised on the same unreasonable reading of the same advertising statements as his consumer fraud claims. *See Seljak v. Pervine Foods, LLC*, No. 21-CV-09561, 2023 WL 2354976, at *15 (S.D.N.Y. Mar. 3, 2023) ("Because the Court has already determined that Plaintiffs have failed to allege that the product's labeling would be likely to deceive or mislead a reasonable consumer," the plaintiff's express warranty claims, pleaded under California law "are also dismissed for the reasons already stated.").

Accordingly, Plaintiff's Third Claim for Relief is dismissed.

III. <u>Leave to Amend</u>

Plaintiff, at the conclusion of his opposition brief, devotes less than one sentence to a request, in the alternative, for leave to file a Second Amended Complaint. (Pl. Br. at 14). "'Plaintiff's request to amend, contained solely in [his] opposition memorandum, is procedurally defective since a bare request to amend a pleading contained in a brief, which does not also attach the proposed amended pleading is improper under Fed. R. Civ. P. 15.'" *Zottola v. Eisai Inc.*, 564 F. Supp. 3d 302, 319 (S.D.N.Y. 2021) (quoting *Oden v. Boston Sci. Corp.*, 330 F. Supp. 3d 877, 904 n.4 (E.D.N.Y. 2018)). The nature of Plaintiff's request is especially improper where, as here, Plaintiff has already had multiple opportunities to amend his pleading. (*See* Doc. 1; FAC; *see also* Doc. 11 (directing the parties to meet and confer "to discuss any grounds for dismissal with respect to the amended complaint in an effort to avoid motion practice"); Individual Practice Rule 4(C) (providing opportunity for plaintiffs to seek leave to amend after letter-exchange)). As noted above, Plaintiff's claims are dismissed due to Plaintiff's failure to allege that Defendant made fraudulent misrepresentations or omissions to sufficiently support a claim under the UCL or FAL, failure to provide pre-suit notice, and for the additional reasons set forth herein. Accordingly, "a busy district court need not allow itself to be imposed upon by the presentation of [Plaintiff's]

10

theories" for a third time. *Nat'l Credit Union Admin. Bd. v. U.S. Bank Nat'l Ass'n*, 898 F.3d 243, 258 (2d Cir. 2018).

"The Second Circuit has indicated that 'when a plaintiff does not advise the district court how the complaint's defects would be cured . . . it is not an abuse of discretion to implicitly deny leave to amend.'" *Zottola*, 564 F. Supp. 3d at 319 (quoting *Altayyar v. Etsy, Inc.*, 731 F. App'x 35, 38 n.4 (2d Cir. 2018)). "In particular, where, as here, Plaintiff 'requested leave to amend in a cursory manner without any explanation for how [he] would be able to cure the [Amended Complaint's] defects,' the Court may simply deny leave to amend by dismissing the offending [Amended Complaint] with prejudice." *Id*. (quoting *Altayyar*, 731 F. App'x at 38 n.4). As Plaintiff has offered no explanation for how he would be able to cure the defects in his claims, the Court denies Plaintiff's request, made in the alternative in his opposition brief, for leave to further amend.

## CONCLUSION

Based upon the foregoing, Defendant's motion to dismiss with prejudice is GRANTED.[6]

The Clerk of the Court is respectfully directed to terminate the motion (Doc. 16) and close this case.

**SO ORDERED:**

Dated: White Plains, New York
       January 25, 2024

_____
Philip M. Halpern
United States District Judge

---

[6] Defendant asks that the Court consider issuing an Order to Show Cause in line with the Northern District of Illinois in *Guzman v. Walmart Inc.*, in which counsel was directed to file a spreadsheet identifying every case filed by the firm since 2020 based on a similar theory, and "to show cause why he should not have to pay the attorneys' fees incurred by Defendant in this case." No. 22-CV-3465, 2023 WL 4535903, at *4 (N.D. Ill. May 15, 2023). The Court declines to issue such an Order to Show Cause at this juncture, but warns "Mr. Sheehan and those with whom he works [to] consider the provisions of Rule 11 before attempting to raise th[ese] argument[s] in the future" before this Court. *Adeghe*, 2024 WL 22061, at *6 n.9.